Thank you. Good morning, your honors. May it please the court, I'm Michael Schaffler, and I represent petitioner appellant Canard Johnson. I intend to reserve two minutes of my time to respond to any argument from the state. In 2006, Canard Johnson, who was then about 25 years old, pled guilty in state court to various theft charges stemming from the purchase of a vehicle with a bad $4,000 check and related misrepresentations on it. Counsel, I think the issue here is that the magistrate judge thought he would have agreed to the max whatever it was. So all he needs to do is get the correct max. And if I understand your contention, it is that the earlier plea bargain would have been lower had the lawyers been aware of what the max was correctly calculated, so he would have gotten the earlier deal. Do I have that right? Correct me, educate me, because it's easy to get these wrong. Thank you, your honor. Yes, I think to some extent. I think my argument, your honor, is that what we have here was, as the magistrate found in the report recommendation, was ineffective assistance of counsel based on various areas. You know the basics. We're talking about the remedy. Yes, your honor. And I think the difference between where I part company with the magistrate judge is I think the magistrate judge's remedy, which was adopted by the district court, essentially was a remedy to almost as if it was a due process type claim to the specific sentence. And I think that the injury in this case is a different one. OK, you're leading up to what I asked you about. But get to what would have happened had his lawyer done a competent job. Well, your honor, I think that's a plea bargain. Would it have been a different plea bargain? Really, we're left in a position. It was a Vargas plea, which is to the max. Really, we're left in a position to speculate what would have happened, I think. Mr. Johnson testified at the hearing that had his counsel told him that the plea offer was to an illegal sentence, that he would have turned it down. So he would have turned down the plea altogether. That's correct. That's what he testified to at the evidentiary hearing. Counsel, what evidence do you have? Can you point us to anything in the record that shows that the ineffective assistance affected the entire plea bargaining process? Because that's sort of the sum and substance of your position, at least as far as the remedy that you urge upon us. Your honor, I think that that was the finding of the magistrate judge in this court. I think in the court below, what magistrate judge Chapman found was that the trial lawyer had made errors relating to the failure to investigate, the failure to advise, the failure to counsel, and that those errors permeated both the plea stage and the sentencing stage. Really, it was one set of errors that permeate. It wasn't two different errors at two different stages. It was the same error with respect to the lack of representation. Here's one of the issues, though. This defendant wanted to get out because he wanted to be there for the birth of his son, for the birth of his child. I don't want to call one of those male or female. His child would still need the father there for the birth. Would that have changed had he had a different calculus, had he had a different maximum? Well, your honor, there was evidence at the evidentiary hearing that Mr. Johnson testified that he would have been willing to wait a day or two, or even put it over the second call, had his lawyer said, I haven't looked into these matters. I can't give you advice about whether you should accept this because I haven't even seen the records myself. I haven't had a conversation with the prosecutor. So there is some evidence that he would have been willing to wait. Where? I'm sorry? Where? Where is that evidence? Yeah, just page number. My guess is you have a sticky on it, and it's underlined. And I don't have a sticky at the right place, so just tell me. It may be underlined, your honor, but unfortunately, I don't have a sticky on this point. I think it's around SER in the 120s, but I'm not sure. Thank you, your honor. Your honor, that's in cross-examination in the state's cross-examination of Mr. Johnson. There also was. OK, what did he say? I just want to read what he said. I understand. He said he testified that he would have been willing to wait for it to be put on second call or wait a day or two. And I'm terribly sorry that I can't pull up the exact place where he says that right now. There's on the supplemental excerpts 109, he asks whether the question was put to him whether his attorney asked him if he would have been willing to wait a half day, and his attorney didn't ask him that question, if he had been willing to wait a day or two. And he said, no, he didn't ask me that question. And then Mr. Johnson testified. And that means he would have missed the birth of his son, right? Not by a day or two, no. His son was born 10 days later. Practically speaking, of course, we don't know when a child's going to be born. And we know that. I don't want to dispute that. Do we have anything we have to defer to here under AEDPA? I couldn't find a state decision that really said what the state judge thought. No, Your Honor, I don't think that there is anything to defer to under AEDPA. This case comes under sort of a unique posture. The state didn't cross appeal. So I think the finding of habeas is established. There's no challenge to that. I think the sole issue for your honors is whether the appropriate remedy, and I think that that is a matter. There is an abuse of discretion standard, which we cited to. However, I think the case law makes clear that if the abuse, if the remedy does not address the constitutional violation at issue in the case, then the remedy is, whatever remedy is imposed, is an abuse of discretion. So what you're really talking about, though, counsel, is whether this is a structural error. Isn't that correct? Because abuse of discretion is quite easy for the district judge to meet. Judge Wu is a very careful, very scholarly judge. He agreed that there was an IAC problem here. And he certified this claim for purposes of the appeal. What I'm struggling with, and I think it may be something my colleagues by their questions have indicated they're struggling with as well, is do we have to do this draconian remedy of going back for an entirely new process, perhaps a new trial, or do we simply send it back for resentencing? Because in this case, I mean, we don't know. Clearly, his counsel was ineffective. You argue, and perhaps correctly, that since this goes to the heart of the matter, if he had gone through with the trial, he might have had an entirely different result. It might have been far worse for him. We just don't know. But I gather your argument is that, in effect, because this is a constitutional right, which he was denied, that this is, in effect, a structural problem that requires us to send this back for a whole new trial or new plea bargain. Is that correct? That's my position, Your Honor. I think that that's, in light of the constitutional injury that was found below, I think that that's the only proper remedy. Do you have any case law that substantiates that position? Well, Your Honor, the three cases that I cited from the Ninth Circuit dealing with, they're not factually exactly on point, but I think they were the closest three. Those are Riggs, Nunes, and Blaylock. I think those cases support my argument that once you have this ineffective assistance of counsel issue, that the remedy is not simply to adjust the sentence to the plea bargain, the missed opportunity on the plea bargain, but that, rather, the remedy is to restore the choice of how to proceed in the case with effective assistance. OK. With that, we've run you over a little bit. We're going to give you a full two minutes on rebuttal since we asked the questions. OK, thank you. We'll hear from the government. Thank you, Your Honor. May it please the Court, Ronald Jacob, Deputy Attorney General for Appellee. As in Appellant's briefing, he still refuses to give any deference whatsoever to the magistrate judge's findings. What finding exactly do we need to defer to? On pages 47 to 48 of the excerpts of record where Magistrate Judge Chapman found that even if Appellant were advised of the appropriate maximum sentence, which would be three years less than the 14 years, four months, that he still would have accepted the Vargas waiver because he wanted to get out so desperately for the impending birth of his child. And here's a judge who heard firsthand Appellant's testimony, the prosecutor's testimony, and defense   which are here on the working edition. OK. I'm looking at 47, 48 of the excerpts. But I don't think, I don't think I'm finding the right thing. Oh, I think I do see what you mean. I have five, Your Honor. I do see what you mean. Alternatively, what page is it on the actual report and the numbering of the magistrate's report? 41 to 42. And that's where it states, quote, It is clear that Petitioner would have accepted the People's Offer of the Vargas Waiver had his defense counsel provided effective assistance and made sure the statutory maximum was properly cut. Why is that reasonable? I mean, he says, I'll take five. He does, the Vargas is just an intermediate step. You take the max, then you behave yourself while you're on your OR, and then you get your deal for a lower amount. And taking five is a good deal if you're looking at 14, but it's not as good a deal if you're looking at a lower number. Why is that a reasonable finding? Well, Your Honor, it would be our position that, well, first of all, the five years was rejected. That was at an earlier hearing. But at that time, we were dealing with incorrect calculus because we had the enhancements, and so it was the process was already affected at that time. Isn't that right? Well, it's our position, Your Honor, that it was not affected or tainted till the plea, because that's when he pled to the invalid priors without the sufficient investigation. But in terms of the deference owed to the district court, the standard is if it's clearly erroneous, clear error. What about the deference owed to the Constitution? We're dealing with a constitutional violation here. Isn't that dimensionally greater than the deference owed to the district court? And I say that as a district court judge. Yes, Your Honor. So there was a constitutional violation, and it needs to be vindicated and remedied, as it was in the Pickens case. In the Pickens case, where the defendant was promised concurrent time for an escape conviction, and then later on it was found Michigan law required additional time, the state stepped in, as we did in this case, and struck the invalid conviction. And the Pickens court says now the defendant's due process rights have been vindicated. Appellant is entitled to a vindication of his rights, not to a windfall. Why is it a windfall? His lawyer stunk from the get-go, basically. Didn't talk to the guy much, didn't know much about what he did, never really interviewed him fully. Didn't know what the max was, didn't know anything about the case, just ran him through for the max. Your Honor, it's a windfall because what was apparent from the record, and to Magistrate Judge Chapman, is that there was a meeting of the minds that everyone expected that appellant would plead to the lawful maximum of the Vargas waiver and get immediate release. But that's predicated on an effective counsel, is it not? And this is something that everybody seems to agree. There was ineffective assistance of counsel here. How can we put much reliance, as this guy's not learned in the law, how can we put much reliance on a so-called meeting of the minds when he doesn't understand his rights? Because the, well, he understood his rights. How do we know that? He understood his rights if he didn't have a lawyer that himself did not understand, apparently, the way the plea process works. Well, because his rights, he was admonished of his rights and knowingly waived them in the state court. Well, let me just change this a little bit along the constitutional line that Judge Marbley mentioned. As you know, Missouri v. Fry and Lafler v. Cooper were decided by the Supreme Court in 2012 earlier. Dealing with the ineffective assistance of counsel and the plea bargaining process, what role, if any, do those companion cases play in our analysis here? Well, it really, well, in Lafler, the plea bargain wasn't conveyed. And so it basically, the Supreme Court found that that is a critical stage of the proceedings where a defendant is entitled to effective assistance of counsel. Well, I didn't know what we're dealing with here. I realize it's slightly different facts, but this is the very process we're talking about. Whether he had effective assistance of counsel as part of the plea process. Well, he did not. Apparently, he did not, according to everybody, including Judge Wu, who made that finding upon the recommendation of the magistrate judge. And, Your Honor, we accept that ruling. We did not appeal that. OK. So I guess my point is, what lesson, if any, does the Supreme Court's most recent pronouncement about the correlation between ineffective assistance of counsel and the plea bargaining process say to this case? Well, Lafler would support a deference to the district court. Because in that case, the court was saying it should go back to the district court. If the district court were to find the defendant, it would not have this. Back to the district court for purposes of sentencing or back for purposes of sending it back for a new trial or a new plea. Right. Or the court said maybe something in between. The court also said, didn't it, counsel, that in some situations, it may be the resentencing alone will not be full redress for the constitutional injury. So my question to you is, if we engage in some type of balancing analysis, where do the greater equities lie in redoing this whole process where the defendant has competent counsel who can advise him fully of his rights or do the equities lie with the state? So it's more convenient just to resentence him and not get into the area of speculation as to whether he would have done anything differently had he had facts and a competent lawyer. Well, Your Honor, it's our position in evidentiary hearing with factual findings, it's not speculation. Lafler did not have an evidentiary hearing. The Smith case and Blaylock cited by appellant did not have evidentiary hearings. We have an evidentiary hearing. I don't think the magistrate and the district judge had the benefit of the new Supreme Court decision in Lafler, did they? No, Your Honor, but it's our position that didn't change anything. It shows you. Who represented him at the evidentiary hearing? Mr. Schaffler and Mr. Proctor. What it comes down to, since we accept the finding of the ineffective assistance of counsel, is that the habeas remedy is an equitable remedy, as we've cited in our briefs, and Lafler even supports that in terms of the various remedies the district court should look at, and in this case, getting to the point where it's not going to neutralize it except to follow our decision in Riggs and just start over where the ineffective assistance started. Well, the violation has been vindicated because the three years have been stricken. Fortunately, well in time for appellant to benefit from it because his sentence otherwise had not expired. But he was still operating on the basis of bad evidence and ineffective assistance. I guess I don't follow you when you tell me that the violation has been vindicated. Because he no longer stands sentenced to an invalid prior. His sentence now is completely legal, and because the magistrate who heard his testimony, the prosecutor and defense counsel, found he wanted to get out so badly that he even if he got competent advice as to the correct maximum, he would have accepted the Vargas waiver. In fact, it would have been three years less. So he would have been even more motivated to accept the Vargas waiver. And we feel that that finding by the magistrate judge, it's not clearly erroneous based on the testimony of defense counsel and the prosecutor, and that that is entitled to deference. Thank you very much for your argument, Mr. Jacob. Mr. Schaffler will give you two minutes for a rebuttal. Thank you. Your Honor, just to directly pick up on a few of Mr. Jacob's points. One, with respect to Mr. Jacob's reliance on pick-ins, again, that goes to a point that I made. That was a due process case. And here we're talking about a different type of injury. And I think Judge Kleinfeld, when you indicated, as the Supreme Court recently said, that the point is to neutralize the taint of the constitutional injury. I think the difference that we have in this argument, the parties have, is that the state believes that with the Strickland analysis that you need to find the incompetent counsel and then prejudice, and then the remedy goes just to fix the prejudice. And I don't think that that's what those three cases are. How do you use that language in Lafler about how one of the things to consider is whether the defendant would have accepted responsibility or did accept responsibility for his crime anyway? Well, Your Honor, I think that, first of all, the Sixth Amendment protects both the guilty and the innocent. And I think that, really, you know, we have a case here where we had an individual who was initially offered, I think, a three-year deal at halftime. And he turned that down because he was adamant about his innocence. He got, subsequently, I think it was a four- or five-year deal, which would have required him to serve 85 percent of that. And he, again, turned it down. And so then he's in the situation where he feels this duress. And I think that's really where it's his counsel's obligation to, you know, to step up and provide solid advice and to provide counsel. And that's really what we didn't have here. At that point, his counsel served as nothing more than a conduit or a messenger between himself and the prosecution. He hadn't done any of his homework to that point. And so he really wasn't in any kind of position to provide him the assistance that Lafler and Fry made clear is critical in our system. Very good. Any other questions from my colleagues? Thank you, Mr. Schaffler. The case of Johnson v. Uribe is submitted. And we thank counsel for argument. We'll next hear argument in the case of N. Ray Ebert. Just a quick question, Your Honor. Yes. We recently had a young bankruptcy attorney join our law firm to paint the watch. Would it be okay if he sat down? Oh, of course. Absolutely. He can even sit on a little throne over there if he wants to. Whatever he likes. Very good. Good morning. Welcome. Mr. Greenberg, I guess you are first up, right? Yes. Very good. Thank you. Thank you.
judges: Marbley, Kleinfeld, Smith